UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HF SINCLAIR REFINING & MARKETING, LLC, | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § § | Civil Action No. 3:23-CV-1798-X |
| NEXTERA ENERGY MARKETING, LLC, | § § § | |
| *Defendant.* | § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant NextEra Energy Marketing, LLC's (NextEra) motion to compel (Doc. 84) and HF Sinclair Refining & Marketing, LLC's (Sinclair) motion to exclude certain opinions of Bob Broxson (Doc. 94).  The Court has reviewed the parties' briefs and the law and **GRANTS IN PART** and **DENIES IN PART** the motion to compel (Doc. 84) and **DENIES** the motion to exclude (Doc. 94).

**I. Factual Background**

This is a natural gas contract dispute arising from Winter Storm Uri.  The parties had a contract under which NextEra would provide Sinclair with natural gas at the OGT Pool, a pipeline system in Oklahoma.  When Uri hit, NextEra declared a force majeure and did not fulfill its delivery obligation to Sinclair for three days.

NextEra seeks the following information from Sinclair: "(1) additional sources of gas supply that [Sinclair] had available to it during Winter Storm Uri, (2) how much that gas cost [Sinclair], and (3) how much gas [Sinclair] reasonably required

1

during Uri, that all goes to the heart of its claimed damages in this case."[1]  In

addition, NextEra wants testimony from an adequately prepared Sinclair

representative who can speak to the topics above.

## II. Legal Standards

 "[U]nder Fifth Circuit law, the party resisting discovery must show

specifically how each discovery request is not relevant or otherwise objectionable."[2]

Federal Rule of Civil Procedure 26 defines to scope of discovery as "any nonprivileged

matter that is relevant to any party's claim or defense and proportional to the needs

of the case."[3]

## III. Analysis

There are three issues in this discovery dispute: (1) whether NextEra's

discovery requests untimeliness is excusable, (2) whether the discovery is relevant,

and (3) whether Sinclair's corporate representative was prepared at the deposition.

## A. Timeliness

This motion to compel came after the deadline for discovery.[4]  Courts consider

different factors when deciding whether a late motion to compel should nevertheless

be permitted.  Those are:

> (1) the length of time since the expiration of the deadline, (2) the length
> of time that the moving party has known about the discovery,

---

[1] Doc. 84 at 1.

[2] *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 593 (N.D. Tex. 2017) (Horan, M.J.) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).

[3] Fed. R. Civ. P. 26(b)(1).

[4] Even though discovery was open for depositions, it was no longer open for documents.  Doc. 57 at 1; Doc. 69 at 1.

(3) whether the discovery deadline has been extended, (4) the explanation for the tardiness or delay, (5) whether dispositive motions have been scheduled or filed, [6] the age of the case, [7] any prejudice to the party from whom late discovery was sought, and [8] disruption of the court's schedule.[5]

NextEra did not file this motion to compel until nearly a month after the document discovery deadline, which is longer than the two-week delay in *Days Inn*.[6]  NextEra has known since at least August 7, 2024, that Sinclair could have used other sources of fuel at the Tulsa Refinery[7]; has known since at least May 2, 2024, about pool imbalances[8]; and has known since at least August of 2024 that Sinclair "ramped down" the Tulsa Refinery.[9]

The parties extended their deposition deadline to September 30, 2024,[10] and then again the parties extended the deadline for expert depositions to October 17, 2024.[11]  NextEra sought this discovery eleven days before dispositive motions were due.[12]  This case is not exceedingly old, just middle-aged; the information sought does not appear unjustifiably prejudicial to Sinclair; and the Court's schedule will be disrupted as it waits for discovery, supplemental briefing, and likely further motions to seal on top of that.  Given that these other factors are a mixed bag, NextEra's explanation becomes very important.

---

[5] *Days Inn Worldwide Inc. v. Sonia Invs.*, 237 F.R.D. 395, 398 (N.D. Tex. 2006) (Ramirez, M.J.).

[6] *Id.*

[7] Doc. 150 at App. 67.

[8] Doc. 129 at 37.

[9] Doc. 150 at App. 176, 178.

[10] Doc. 69 at 1.

[11] Doc. 78 at 1.

[12] Doc. 84 at 17.

As for NextEra's explanation for the delay, it only provides one for the long imbalance issues, not the "ramped down" issue.  NextEra did not learn of the long imbalance's presence on the spreadsheet until September 30, 2024, and discovered on that day (the day NextEra deposed Sinclair's corporate representative) that Sinclair had drawn roughly half of the gas needed at the Tulsa Refinery from the long imbalance.[13]  Sinclair provided NextEra a less-redacted version of the spreadsheet—in the middle of the deposition.[14]

Therefore, the Court finds that the late motion to compel is excused as to the first two categories of information—the ones dealing with the long imbalance—but not with respect to documents relating to the "ramped down" state of the Tulsa Refineries.

### B. Relevance

As for relevance, one part of the contractual damages remedy is key: the Cover Standard, which is used to determine a component of the damages calculation. Crucially, the "Cover Standard" means "that if there is an unexcused failure to take or deliver any quantity of Gas pursuant to this Contract, then the performing party shall use commercially reasonable efforts to . . . obtain Gas . . . at a price reasonable for the delivery or production area . . . ."[15]  The Cover Standard also contemplates the "immediacy of the Buyer's Gas consumption needs."[16]

---

[13] Doc. 84 at 9–10.

[14] Doc. 84 at 9.

[15] Doc. 84-1 at App. 22.

[16] Doc. 84-1 at App. 22.

Here, it is possible that information concerning replacement gas would factor into the damages calculation, because it could reveal the prices Sinclair paid for gas obtained, which goes directly to the Cover Standard.  For its part, Sinclair says this information is irrelevant because the contractual obligation is to provide gas to the OGT Pool, not Sinclair's downstream refineries.   Therefore, Sinclair argues, information concerning gas obtained at the refineries is irrelevant to show replacement gas.  At this preliminary stage, it is inappropriate to conduct a full and binding contractual interpretation.  Here, it is enough that obtaining gas under the contract possibly refers to downstream replacement.

NextEra argues that the extent to which Sinclair "ramped down" the Tulsa Refineries reveals that Sinclair could have operated the Tulsa Refineries on the non-NextEra gas alone.  NextEra connects this with the contractual term in the Cover Standard that considers "the immediacy of the Buyer's Gas consumption needs."[17] But Sinclair never addresses this contractual term or shows that it is disconnected from the present dispute such that it renders the information irrelevant to the damages calculation.

## C. Corporate Representative Preparedness

NextEra does not defend its position that Sinclair's corporate representative (Aaron Smedley) was unprepared as to the "ramped down" state in its reply brief. Even if it did, it could not succeed in arguing it is entitled to another deposition of a corporate representative on that point.  NextEra seeks a corporate representative to

---

[17] Doc. 84-1 at App. 22.

testify to the "ramped down" state of the Tulsa Refineries.   The corporate representative did testify to the ramped down state—and it appears NextEra simply did not like the answer Smedley gave.   Far from being unprepared, Smedley explained that the precise quantity needed in a ramped down state is not just unknown to him—but is an unknown quantity altogether.[18]   Just because a party doesn't like the answer they get in a deposition, it doesn't get to keep playing witness Whac-A-Mole until it gets one it does like.

NextEra also argues that Sinclair's corporate representative was unprepared to answer questions relating to the long imbalance.  Sinclair argues that NextEra's topics were too broad or vague, but because NextEra did not know for a fact that the long imbalance was used (although it may have suspected it) until the deposition, springing that information on NextEra at the very end of discovery, midway through the deposition, could be a reason NextEra's notices lacked precision in their language. In short, rewarding Sinclair's mid-deposition document dump would offend basic notions of fairness.   Accordingly, NextEra may depose another corporate representative from Sinclair on the topic of long imbalances.

### IV. Motion to Exclude Certain Opinions of Broxson

Because this is a bench trial, "there is no risk of tainting the trial by exposing a jury to unreliable evidence."[19]  "Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in

---

[18] Doc. 150 at App. 43.

[19] *Whitehouse Hotel Ltd. P'ship v. Comm'r*, 615 F.3d 321, 330 (5th Cir. 2010).

place of a jury."[20]    Additionally, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[21]

Accordingly, because this is a bench trial, the Court will give Broxson's opinion whatever weight it deserves. Sinclair also seeks to exclude Broxson's Opinion 1 on the theory that it is just legal conclusions. As above, the Court will assign to that information the weight which it is due—if he states a legal conclusion, the Court will not rely on it. And if it is merely context, then it is allowable. Accordingly, the Court **DENIES** Sinclair's motion to exclude.

## V. Conclusion

The Court **ORDERS** Sinclair to produce the discovery material above within twenty-one days of the date of this order. In particular, the Court **ORDERS** Sinclair to produce documents sufficient to show:

(1)    The sources of gas (including from the long imbalance on ONG) Sinclair had available to power the Tulsa Refineries during Winter Storm Uri, including the volume of gas available to Sinclair on each day on which Sinclair has alleged damages, and the relevant terms of any agreements between Sinclair and ONG regarding the long imbalance; and

(2)    the price Sinclair paid or would have been charged for the gas on the ONG long imbalance, including but not limited to producing the relevant terms of any

---

[20] *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000).

[21] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

agreements between Sinclair and ONG regarding pricing of that gas, and a fully unredacted version of the spreadsheet previously produced as HFS_0000651, HFS_0002015, and HFS_0002016.

The Court **FURTHER ORDERS** that Sinclair prepare a corporate representative to testify regarding the foregoing topics. The deposition shall occur within twenty-eight days of the date of this order and shall not last longer than three hours. Lastly, the Court **FURTHER ORDERS** NextEra to file briefing—not to exceed eight pages—covering the impact of any new information regarding damages on the motions for summary judgment within thirty-five days of the filing of this order and Sinclair to file responsive briefing of no more than eight pages within seven days of NextEra's briefing.

**IT IS SO ORDERED** this 17th day of April, 2025.

_____

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE