UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HF SINCLAIR REFINING & MARKETING, LLC, | § § § | |
| *Plaintiff,* | § § § | Civil Action No. 3:23-CV-1798-X |
| v. | § § | |
| NEXTERA ENERGY MARKETING, LLC, | § § § | |
| *Defendant.* | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant NextEra Energy Marketing, LLC's (NextEra) motion for summary judgment (Doc. 90), HF Sinclair Refining & Marketing, LLC's (Sinclair) motion for summary judgment (Doc. 92), and the joint motion for a status conference (Doc. 123). The Court has reviewed the parties' briefs and the law and **GRANTS IN PART** and **RESERVES IN PART** Sinclair's motion for summary judgment and **DENIES IN PART** and **RESERVES IN PART** NextEra's motion for summary judgment. The Court additionally **FINDS AS MOOT** the motion for a status conference.

In short, the Court determines that NextEra does not have a force majeure defense under the contract and that it has abandoned its other defenses. The Court reserves the question of damages until after briefing is concluded in accordance with the Court's order on the motion to compel.

1

## I. Factual Background

This is a natural gas contract dispute arising from Winter Storm Uri. The parties had a contract under which NextEra would provide Sinclair with natural gas through OGT Pool, a pipeline system in Oklahoma. Seemingly, all was well until Uri hit.

Winter Storm Uri severely disrupted the market for natural gas in Oklahoma. As the temperatures plummeted, prices jumped to between 100 and 400 times the pre-Uri price. During the storm, gas supply in Oklahoma dropped by roughly 57% and NextEra's baseload supply dropped by 37%. As gas supply dropped off a cliff, NextEra declared a force majeure and did not fulfill its delivery obligation to Sinclair for three days.[1]

The parties' contract contains a force majeure provision across several sections. The contract contains two highly relevant provisions: Section 11.2 and Section 11.8. Among other terms, Section 11.2 provides that "Force Majeure shall include, but not be limited to, the following: . . . (ii) weather related events affecting an entire geographic region, such as low temperatures which cause freezing or failure of wells or lines of pipe."[2] This seems fitting. But wait, there's more. Section 11.8 provides:

> Notwithstanding Sections 11.2 and 11.3, in no event shall an interruption in, failure of, or unavailability of Gas from, Seller's normal sources of Gas supply be considered an event of Force Majeure under this Section 11 as long as Gas is available and trading on the open

---

[1] The Court and the parties refer to those days as "Gas Days." Specifically, those are Gas Days 16, 17, and 18.

[2] Doc. 90-3 at App. 11.

market at pools or hubs in the Buyer's market area and from which such Gas could be readily transported to Buyer's location.[3]

The parties filed cross-motions for summary judgment largely disputing whether Section 11.8 prevents NextEra from declaring a force majeure event because some (expensive) gas was, in fact, trading on the open market during the time in question.

## II. Legal Standards

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] "A fact is material if it 'might affect the outcome of the suit'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[5] Courts "resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[6]

## III. Analysis

### A. Force Majeure

This case comes down to the meaning of Section 11.8 of the contract between NextEra and Sinclair and whether it provides an out for NextEra's failure to meet its delivery obligations. There is no dispute that NextEra failed to deliver natural gas

---

[3] Doc. 90-3 at App. 19

[4] Fed. R. Civ. P. 56(a).

[5] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6] *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (cleaned up).

to the agreed-to delivery point during Winter Storm Uri. There is also no dispute that Winter Storm Uri sucked and is one of only a handful of entities to have a lower approval rating than Congress. What is in dispute, however, is what exactly "available and trading on the open market" means under the contract.[7]

Because Texas law governs the contract, the Court looks to Texas law to understand this contractual term. Therefore, the Court "must construe the contract as a whole and evaluate the overall agreement to determine what purposes the parties had in mind at the time they signed it."[8] Additionally, the Court may "neither rewrite the parties' contract nor add to its language."[9] "The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument."[10] Finally, "[t]he terms used in the [contract] are given their plain, ordinary meaning unless the [contract] itself shows that the parties intended the terms to have a different, technical meaning."[11]

To show that Section 11.8 does not apply here, NextEra first avers that a disruption of the "normal sources of Seller's Gas supply" refers not to market-wide disruptions, but rather small-scale disruptions. NextEra contends Section 11.8 comes into play only if NextEra's normal sources of gas are disrupted but "other sources of

---

[7] Doc. 90-3 at App. 19.

[8] *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 239 (Tex. 2016) (cleaned up).

[9] *Id.* (cleaned up).

[10] *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

[11] *Am. Nat. Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir.2001) (citing *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984)).

gas in the area were not disrupted."[12]  And NextEra points out its notice to Sinclair "described a wide-scale interruption, and not merely interruption of [NextEra]'s 'normal sources of gas supply.'"[13]  Specifically, NextEra argues, "normal sources being disrupted only prevents a seller from declaring a force majeure when other supplies of gas are otherwise 'available and trading on the open market' and 'could be readily transported to Buyer's location.'"[14]  That is a fair reading, but it does not rule out the application of Section 11.8 here.  Instead, it limits the applicability of Section 11.8 to situations where gas is not available, trading, and readily transportable.

NextEra also argues that because the contract's language was copied from Sinclair's contract with a gas producer, the meaning originally referred to disruptions to the "Seller's gas producing region or wellhead," rather than "a widespread supply disruption such as Uri."[15]  But NextEra is not a natural gas producer, so this argument does not address the language of the contract *here*.

Next, NextEra argues that reading Section 11.8 in the way Sinclair suggests would render superfluous other portions of the contract.  But Section 11.8 itself contains a "notwithstanding" clause—the inclusion of which indicates the parties believe there may well be tension between other clauses and Section 11.8.[16]  That's

---

[12] Doc. 90-6 at 22.

[13] Doc. 90-6 at 21.

[14] Doc. 90-6 at 22–23 (quoting Section 11.8).

[15] Doc. 153 at 22

[16] *See Helmerich & Payne Int'l Drilling Co. v. Swift Energy Co.*, 180 S.W.3d 635, 643 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("When parties use the clause 'notwithstanding anything to the contrary contained herein' in a paragraph of their contract, they contemplate the possibility that other parts of their contract may conflict with that paragraph, and they agree that this paragraph must be given effect regardless of any contrary provisions of the contract.") (collecting cases).  *See also*

the point of such a clause—to reflect that whatever else is in the Sections 11.2 or 11.3, Section 11.8 reigns supreme over conflicting portions. So, even if there is tension between Section 11.8 and other portions of the contract, that carries little weight because of the "notwithstanding" clause.

The bulk of the parties' arguments center around what exactly "available and trading" means under the contract. NextEra produced uncontested evidence showing that on Gas Days 16, 17, and 18—the trading days in question—Gas trading volumes were roughly 3%, 7%, and 11% of their pre-Uri volumes. Thus, Gas was available and trading and was being transported during Uri—albeit at high prices.[17]

It should not be surprising that gas was available for purposes of the contract. The Cambridge Dictionary defines "available" as "able to be bought or used."[18] Merriam–Webster's Collegiate Dictionary defines it as "present or ready for immediate use," in the context of resources.[19] And the American Heritage Dictionary

---

*Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 639 (Tex. 2010) (holding that language in one statute can render ineffective conflicting statutes).

[17] Doc. 155 at 18–19 (high prices); Doc. 155 at 18 (admitting that gas was trading on the days in question). As for transportability, NextEra argues that any available gas was not readily transportable because market participants needed to prioritize customers serving human needs. Doc. 153 at 26. But NextEra never addresses how those orders impacted transportability. Whether someone else wanted the gas and had a better public policy argument in their favor is not the same as whether NextEra could buy the gas and get it to Sinclair.

[18] *Available*, *Cambridge Dictionary*, *available at* https://dictionary.cambridge.org/dictionary/english/available.

[19] *Available*, *Merriam–Webster's Collegiate Dictionary* (11th ed. 2003).

6

defines "available" as "[p]resent and ready for use; at hand; accessible,"[20] and also "[c]apable of being gotten; obtainable."[21]

None of these definitions contains a hint of the standard for which NextEra advocates: practicability. Indeed, in *Mieco, L.L.C. v. Pioneer Natural Resources USA, Inc.*,[22] a case upon which NextEra relies, the contractual term at issue was, "The term 'Force Majeure' as employed herein means an event or circumstance which prevents one party from performing its obligations."[23] The Fifth Circuit interpreted the operative word "prevent" to require something like impracticability, rather than impossibility.[24] But there, the Fifth Circuit relied on dictionary definitions for "prevent" that contemplated impracticability—or at least did not necessitate impossibility.[25] Section 11.8 renders this case a stark contrast to force majeure cases like *Mieco*: though the storm drove gas supply down and prices up, this Court is unable to find a definition of the word "available" that includes the diminished quantity experienced during the storm, and NextEra doesn't even try to come up with one itself.

---

[20] *Available, American Heritage Dictionary* (5th ed. 2011) (using as an example: "kept a fire extinguisher available at all times").

[21] *Id.* (using as an example "a bedspread available in three colors").

[22] 109 F.4th 710 (5th Cir. 2024).

[23] *Id.* at 714.

[24] *Id.* at 717.

[25] *See id.* While NextEra cites to a district court version of *Mieco*, the Court prefers to look to the Fifth Circuit's opinion affirming in part and reversing in part the district court's judgment. Nevertheless, that case deals with wholly different contractual language than the present case.

What NextEra really wants is for the Court to add the word "readily" to create the contractual term "readily available." Even its brief mischaracterizes the contractual term in this way.[26] But it is hornbook interpretation that courts cannot (and this Court will not) add terms to the contract that simply are not there.[27] Even more importantly, the contractual provision uses the term "readily" when it mentions "readily transportable" but neglects to use it when mentioning "available."[28] *Expressio unius est exclusio alterius*.[29] The use of the word "readily" later on, but not to modify "available" is strong textual evidence that the term "available" simply means that some gas was available, not that gas was "readily available."

Despite this, NextEra attempts to marshal what it views as "decades of precedent in Texas and the Fifth Circuit"[30] that support its view of the contract. Those cases, according to NextEra, stand for the proposition that one ought not interpret a force majeure provision so narrowly that it only applies when the contract would already be unenforceable due to impossibility. NextEra hangs its hat largely on a single footnote from *Ergon-West Virginia, Inc. v. Dynegy Marketing & Trade*.[31] In *Ergon*, the Court noted that the appellant's interpretation of the force majeure provisions "would make the force majeure provisions essentially meaningless because

---

[26] Doc. 118 at 2 ("Section[] 11.8 focus[es] on there being gas readily 'available' and 'trading' . . . .").

[27] *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003).

[28] Doc. 90-3 at App. 19.

[29] "The expression of one thing implies the exclusion of others." Antonin Scalia & Bryan A. Garner, *Reading Law* 107 (2012).

[30] Doc. 153 at 3 (collecting cases).

[31] 706 F.3d 419 (5th Cir. 2013)

8

it would mean that a seller could never invoke force majeure so long as there was some gas available anywhere in the world, at any price. It was not clearly erroneous for the district court to disagree with this interpretation."[32]

But the Fifth Circuit did not interpret the terms of the contract at issue here. Unlike Sinclair and NextEra's contract, there is no indication that the Fifth Circuit was interpreting whether gas was "available and trading." As for the Fifth Circuit's observation that an interpretation requiring impossibility would render the force majeure clause "essentially meaningless," that too is inapplicable here. Section 11.8 shifts risk to NextEra by requiring it, essentially, to obtain replacement gas for Sinclair—but if it cannot even obtain expensive gas in its own market area or if it cannot readily transport it, then it can declare a force majeure. That is much narrower than the contract in *Ergon* where seemingly the existence of "some gas anywhere in the world" would preclude the seller from declaring force majeure.[33] Therefore, Section 11.8's narrowness renders the Fifth Circuit's observation on force majeure clauses inapplicable here.

NextEra also relies on *Tejas Power Corporation v. Amerada Hess Corp.*[34] In that case, similar to here, a cold snap caused a spike in gas prices and the seller tried to invoke force majeure under the contract.[35] The contract provided that a force majeure was an event that "could not have been prevented or [wa]s unable to be

---

[32] *Id.* at 425 n.5.

[33] *Id.*

[34] No. 14-98-00346-CV, 1999 WL 605550 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (not designated for publication).

[35] *Id.* at *1, *3.

overcome," among other requirements.[36]  There, the Fourteenth Court rejected the argument that the seller could "overcome" the force majeure event by purchasing replacement gas on the spot market because the price had increased to five times the normal amount and "[i]t appears from the plain wording of the contract . . . that this is the very obligation [the seller] sought to avoid by inclusion of the *force majeure* clause in the cont[r]act."[37]  Importantly, however, there is no indication that that contract included Sinclair and NextEra's "notwithstanding" clause, which places the words in Section 11.8 above those in Sections 11.2 and 11.3.  For *Tejas Power Corp.* to truly be instructive here, the clauses must be similar.  But they aren't.

NextEra also relies on *Marathon Oil Company v. Koch Energy Services, LLC*[38] and *LNG Americas, Inc. v. Chevron Natural Gas*.[39]  While those cases had force majeure clauses, neither had a clause similar to Section 11.8.[40]

*    *    *

NextEra's arguments are fundamentally unpersuasive.  Section 11.8 shifts the risk to NextEra of expensive gas.  It only gives NextEra an out for no gas or gas it

---

[36] *Id.* at *3.

[37] *Id.* at *3.

[38] No. 4:21-CV-1262, 2023 WL 4032879 (S.D. Tex. May 8, 2023), *report and recommendation adopted*, No. 4:21CV1262, 2023 WL 4033332 (S.D. Tex. June 15, 2023), *motion to certify appeal denied*, No. 4:21CV1262, 2023 WL 5310575 (S.D. Tex. Aug. 17, 2023).  NextEra cites a report and recommendation to deny the certification of an interlocutory appeal, which states that the seller "cites no authority, in this Circuit or otherwise, obligating a seller to purchase replacement gas on the spot market under the circumstances present here."  *Marathon Oil Co. v. Koch Energy Servs., LLC*, No. 4:21-CV-1262, 2023 WL 5167036, at *4 (S.D. Tex. July 27, 2023), *report and recommendation adopted*, No. 4:21CV1262, 2023 WL 5310575 (S.D. Tex. Aug. 17, 2023).  Again, the court did not analyze the contractual provision at issue here, so it is inapposite.

[39] No. CV H-21-2226, 2023 WL 2920940 (S.D. Tex. Apr. 12, 2023).

[40] *Marathon*, 2023 WL 4032879 at *11–12; *LNG Americas*, 2023 WL 4032879, at *2.

10

cannot readily transport to Sinclair. NextEra cannot escape the operation of Section 11.8 by claiming gas was expensive. As a result, NextEra's performance obligation was not excused by force majeure.

## B. Sinclair's Own Breach

The Court prefers to resolve all of the damages inquiries at once. Because NextEra's allegation that Sinclair caused its own damages on Gas Day 18 implicates damages, the Court will refrain from answering those questions until it resolves other damages questions. And the Court cannot yet resolve the question of damages until further discovery is conducted, as mentioned in the Court's opinion and order on NextEra's motion to compel.

## C. Other Defenses and Status Conference

NextEra launched a bevy of other defenses in its complaint, which Sinclair addressed in its motion for summary judgment, but NextEra never responded to those arguments beyond noting that doing so would be a waste of time. As a result, NextEra abandoned those defenses.[41] Accordingly, the Court **GRANTS** Sinclair's motion for summary judgment as to those defenses.

The parties also requested a status conference to seek guidance on the timing of the Court's decisions. Given the Court's decisions today, the Court finds such guidance unnecessary and **FINDS AS MOOT** the motion.

---

[41] *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Roberts v. Overby-Seawell Co.*, No. 3:15-CV-1217-L, 2018 WL 1457306, at *11 (N.D. Tex. Mar. 23, 2018) (Lindsay, J.).

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **RESERVES IN PART** Sinclair's motion for summary judgment and **DENIES IN PART** and **RESERVES IN PART** NextEra's motion for summary judgment. The Court also **FINDS AS MOOT** the motion for a status conference.

**IT IS SO ORDERED** this 17th day of April, 2025.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

12